Approved: _____  _____
         JACOB R. FIDDELMAN / KEDAR S. BHATIA
         Assistant United States Attorneys

Before:  THE HONORABLE BARBARA MOSES
         United States Magistrate Judge
         Southern District of New York

20 MAG 10814

- - - - - - - - - - - - - - - - - - - - X
                                         :  SEALED COMPLAINT
UNITED STATES OF AMERICA                 :
                                         :  Violations of 18 U.S.C.
         - v. -                          :  §§ 1512(c), 1512(k) & 2
                                         :
DIMITRIOS LYMBERATOS,                    :  COUNTY OF OFFENSE:
                                         :  NEW YORK
                  Defendant.             :
                                         :
- - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss:

STEVEN SOO HOO, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE
(Obstruction of Justice)

1. In or about May 2020, in the Southern District of New York and elsewhere, DIMITRIOS LYMBERATOS, the defendant, corruptly obstructed, influenced, and impeded, and attempted to obstruct, influence, and impede, an official proceeding before the DEA, and aided and abetted the same, to wit, LYMBERATOS arranged for a greeting card containing a white powdery substance later determined to be cocaine to be sent to the home address of a DEA Diversion Investigator whom LYMBERATOS knew was conducting a regulatory investigation into a pharmacy operated by LYMBERATOS.

(Title 18, United States Code, Sections 1512(c)(2) and 2.)

1

COUNT TWO
(Conspiracy to Obstruct Justice)

2. In or about May 2020, in the Southern District of New York and elsewhere, DIMITRIOS LYMBERATOS, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to commit obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(2).

3. It was a part and an object of the conspiracy that DIMITRIOS LYMBERATOS, the defendant, and others known and unknown, would and did corruptly obstruct, influence, and impede an official proceeding before the DEA, to wit, LYMBERATOS and others conspired to arrange for a greeting card containing a white powdery substance later determined to be cocaine to be sent to the home address of a DEA Diversion Investigator whom they knew was conducting a regulatory investigation into a pharmacy operated by LYMBERATOS.

(Title 18, United States Code, Section 1512(k).)

The bases for my knowledge of the foregoing charges are, in part, as follows:

4. I am a Special Agent with the DEA, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

Overview

5. As set forth below, the DEA has determined that DIMITRIOS LYMBERATOS, the defendant, is the operator of a pharmacy in Queens, New York (the "Pharmacy"). Beginning in or about November 2019, the DEA, led by a DEA Diversion Investigator (the "Investigator"), conducted an overt regulatory investigation into the Pharmacy, which had the effect of delaying the issuance of the Pharmacy's registration to dispense controlled substances. LYMBERATOS and others reacted to the investigation by taking several steps,

including hiring a private investigator to obtain the Investigator's home address, and causing to be mailed to the Investigator's home a greeting card (the "Greeting Card") containing a white powdery substance that later tested positive for cocaine. LYMBERATOS did this in order to interfere with and obstruct the pending investigation into the Pharmacy by threatening the Investigator, deliberately causing the Investigator to fear for her physical safety, and to create trouble for the Investigator by causing her to come into possession of an illegal controlled substance.

### The DEA Pharmacy Registration Process

6.  As part of its regulatory mission, the DEA oversees an administrative process for the supervision of retail pharmacies that dispense controlled substances. *See generally* 21 C.F.R. Part 1301. That supervision includes, among other things, an initial registration process in which a pharmacy seeking to dispense controlled substances must submit information regarding the business and its state-level pharmacy licensing and authorizations to dispense controlled substances, and answer inquiries including regarding disciplinary and liability-related history.

7.  When the DEA receives a new registration application from a retail pharmacy, it conducts routine checks to verify the information provided in the application before granting the registration. If the application passes such checks, the application can then be approved. However, if discrepancies or other issues are discovered in the course of those routine checks, the application can be flagged for further review and investigation by trained DEA Diversion Investigators. The final decision on an application can often be substantially delayed if the application is flagged for further review as the DEA conducts the necessary investigation and any appropriate follow-up inquiry.

### The DEA Regulatory Proceeding Involving LYMBERATOS's Pharmacy

8.  Based on my participation in this investigation, including my personal observations, my review of law enforcement reports and other documents, including records of regulatory proceedings maintained by the DEA, and my conversations with other law enforcement officers, I have learned the following, in substance and in part:

   a.  In or about November 2019, an application was submitted by a certain individual ("Person-1") for a retail pharmacy registration for the Pharmacy. The application listed

3

Person-1 as the supervising pharmacist for the Pharmacy, and a search of the national pharmacy database reflects that the listed president of the Pharmacy is another individual ("Person-2").

b. Based on a review of open-source and law enforcement records and publicly accessible social media posts, I have learned that Person-2, the listed president of the Pharmacy, is the sister of DIMITRIOS LYMBERATOS, the defendant. As set forth in greater detail below, on or about July 31, 2020, the DEA seized LYMBERATOS's personal cellphone (the "LYMBERATOS Cellphone") pursuant to a judicially authorized search and seizure warrant. Based on a review of the electronically stored contents of the LYMBERATOS Cellphone, the DEA has determined that LYMBERATOS (and not Person-2) is the principal operator of the Pharmacy. Specifically, communications found on the LYMBERATOS Cellphone reflect, in substance and in part, that LYMBERATOS runs the Pharmacy's operations, including scheduling, ordering supplies and inventory, and supervising employees, including with respect to hiring and termination. For example, communications found on the LYMBERATOS Cellphone, discussed in greater detail below, reflect that, in or about April 2020, LYMBERATOS terminated Person-1 as the Pharmacy's supervising pharmacist.

c. The Pharmacy's November 2019 registration application was processed by the New York Division of the DEA, located in New York, New York. DEA records reflect that, based on certain incomplete or inaccurate answers provided in the registration application regarding Person-1's professional licensing and disciplinary history as a pharmacist, the matter was flagged for further review, a DEA investigation proceeding was opened out of the New York Division, and the matter was assigned to the Investigator.

d. Over the next several months, the Investigator and other DEA personnel conducted an overt investigation into the Pharmacy's registration application and Person-1's professional licensing and disciplinary history as a pharmacist. DEA records reflect that the investigation included, among other steps: in-person interviews by the Investigator of Person-1 and Person-2; issuance of multiple administrative subpoenas for records from various other agencies and entities; letters and email correspondence between the Investigator and Person-2 in which the Investigator sought additional information from Person-2 on behalf of the Pharmacy and, later, similar communications between the Investigator and an attorney for the Pharmacy.

4

   e. DEA records reflect that on or about March 31, 2020, the Investigator corresponded with a legal assistant working with the Pharmacy's attorney, who had inquired about the status of the Pharmacy's registration application.  In substance and in part, the Investigator reminded the legal assistant that previous communications from the Pharmacy to the DEA had indicated that the Pharmacy would be replacing Person-1 as supervising pharmacist, and the DEA was therefore waiting for that replacement to occur.

   f. Electronically stored records found on the LYMBERATOS Cellphone reflect that, several days later, on or about April 5, 2020, at approximately 6:15 p.m., Person-1 and LYMBERATOS communicated by text message regarding a phone call Person-1 apparently had received from state regulatory officials inquiring about certain controlled substances prescriptions filled by the Pharmacy.  Person-1 stated to LYMBERATOS, in part, "I'm scared and I'm also not in a position to lie t you but My name is on the line here if this investigation goes into any of that ordering . . . So if your letting me go, I'd be careful bc I'd have zero job opportunity, lose my license, and have zero problem risking that because I've been silent and respectful regarding all the non kosher stuff . . ."  Approximately 40 minutes later, LYMBERATOS responded, in part, "I promise you has nothing to do with dea thing because I wouldn't do it now I would of done it back in December."

   g. Based on my training and experience and participation in this investigation, I believe that Person-1 was expressing displeasure at the regulatory scrutiny Person-1 was receiving in connection with employment at the Pharmacy.  I further believe that Person-1 was informing LYMBERATOS that Person-1 was aware that LYMBERATOS was engaged in improper or illegal conduct in connection with the Pharmacy ("the non kosher stuff") and that Person-1 would have no reason to remain "silent" and not divulge that information if LYMBERATOS replaced Person-1 as supervising pharmacist at the Pharmacy ("if your letting me go").

   h. DEA records reflect that, approximately four days later, on or about April 9, 2020, the Investigator received an email from the attorney for the Pharmacy informing the Investigator that the Pharmacy had changed its supervising pharmacist.

   i. As of May 2020, the DEA's regulatory investigation remained ongoing and the Pharmacy's registration application remained pending.  The existence of the Investigator's ongoing investigation was causing substantial delay in the review and potential approval of the Pharmacy's controlled substances registration.  During the pendency of the investigation, the

Pharmacy was not authorized to dispense controlled substances, which, based on my training and experience and participation in this investigation, I believe was likely having a negative impact on the Pharmacy's business and financial status, given the revenue that can be generated from dispensing controlled substances.

### LYMBERATOS Sends a Threatening Package to the Investigator

9. As set forth below, DIMITRIOS LYMBERATOS, the defendant, took deliberate steps to obstruct the DEA regulatory proceeding involving the Pharmacy. Specifically, LYMBERATOS had the Greeting Card filled with white powder, later determined to be cocaine, sent to the Investigator's home. Evidence of LYMBERATOS's obstructive conduct includes content found on the LYMBERATOS cellphone, which shows, among other things, (i) LYMBERATOS and another person made repeated attempts to find the Investigator's home address, (ii) LYMBERATOS retained a private investigator to obtain the Investigator's home address, and (iii) LYMBERATOS repeatedly tracked online the Greeting Card filled with cocaine as it was shipped from California to the Investigator's home in the New York City area.

10. Based on my participation in this investigation, including my personal observations, my review of law enforcement reports and other documents, and my conversations with other law enforcement officers, I have learned the following, in substance and in part:

    a. On or about May 28, 2020, the Investigator received the Greeting Card through the United States Postal Service, addressed to the Investigator at the Investigator's home address from a listed sender the Investigator did not recognize. Inside the Greeting Card, the Investigator found several small packets containing an unidentified white powder, causing the Investigator significant alarm about having potentially been exposed to a dangerous substance. The Investigator immediately notified the DEA, other DEA personnel responded to the scene, and the Investigator was taken to the hospital for toxicology screening.

    b. Subsequent DEA laboratory tests determined that the white powder contained in the Greeting Card was cocaine.

    c. As part of this investigation, on or about July 31, 2020, pursuant to a judicially authorized search and seizure warrant, the DEA seized the LYMBERATOS Cellphone from DIMITRIOS LYMBERATOS, the defendant, at a location in Queens that, based on surveillance, GPS location information for the LYMBERATOS

Cellphone, internet service provider records described below, and agents' observations while executing the warrant, appears to be LYMBERATOS's residence (the "LYMBERATOS Residence").

       d.  Electronically stored information found on the LYMBERATOS Cellphone pursuant to that search warrant reflects, among other things, the following:

          i.  Based on the emails, text messages, photographs, and mobile applications found on the LYMBERATOS Cellphone, and the fact that the LYMBERATOS Cellphone was seized from LYMBERATOS, I believe that the LYMBERATOS Cellphone is LYMBERATOS's personal cellphone.  Records provided by the service provider show that the LYMBERATOS Cellphone is subscribed to in LYMBERATOS's name.

          ii.  On or about February 5, 2020, at approximately 1:39 p.m., the LYMBERATOS Cellphone was used to take a photograph of a letter sent by the DEA to the Pharmacy regarding the Pharmacy's pending registration application (the "Photograph"). The letter had been delivered to the Pharmacy the previous day. The letter listed the Investigator and the Investigator's supervisor as the primary points of contact for the DEA's investigation.

          iii.  On or about May 6, 2020, at approximately 12:43 a.m., LYMBERATOS, using the LYMBERATOS Cellphone, sent a text message to a certain individual with whom LYMBERATOS was in a romantic relationship ("CC-1"), attaching the Photograph. Approximately one minute later, LYMBERATOS sent a text message to CC-1 attaching a screenshot of an earlier email from the Investigator regarding the Pharmacy's pending registration application.  LYMBERATOS then sent a text message to CC-1 containing a name used by the Investigator.  At approximately 1:47 a.m., CC-1 sent LYMBERATOS a text message containing a screenshot of an online search that CC-1 had apparently conducted using the Investigator's name and neighborhood of residence.  LYMBERATOS and CC-1 continued to exchange text messages containing several different addresses, most of which are affiliated with other individuals with a connection to the Investigator.  Based on my training and experience and participation in this investigation, I believe that LYMBERATOS and CC-1 were engaged in searching together for the Investigator's home address using various online search tools, and that they were finding and discussing various

possible addresses associated with the Investigator resulting from their searches.

        iv.   The next day, on or about May 7, 2020, the LYMBERATOS Cellphone took screenshots of websites showing the name, date of birth, phone numbers, and addresses of the Investigator's supervisor, whose name was also listed on the letter that was sent to the Pharmacy by the DEA, and was depicted in the Photograph, as discussed above.  At around the same time, LYMBERATOS's credit card was charged $43.50 by an online background check website.  Based on my training and experience and participation in this investigation, I believe that LYMBERATOS was conducting similar online searches to obtain personal information and addresses regarding the Diversion Investigator's supervisor.

        v.   Text messages found on the LYMBERATOS Cellphone show that, the next day, on or about May 7, 2020, LYMBERATOS hired a private investigator with whom LYMBERATOS had a preexisting relationship (the "Private Investigator") to run a background check on the Investigator.  The resulting background report was provided to LYMBERATOS by the Private Investigator on or about May 9, 2020 and contained, among other things, the Investigator's home address to which the Greeting Card was subsequently sent.

        vi.   On or about May 26, 2020, approximately two weeks after LYMBERATOS learned the Investigator's home address from the Private Investigator, the Greeting Card and the powder cocaine inside of it were sent to the Investigator at the Investigator's home address and, as set forth above, on or about May 28, 2020, the Investigator received the Greeting Card and its contents at the Investigator's home.

    e.   Based on my review of data provided by the United States Postal Inspection Service, I have learned that the Greeting Card was shipped using a method that allowed for tracking the package's shipping progress through the United States Postal Service website.  During the approximately two days that the Greeting Card was in transit, its shipping progress was tracked multiple times by computers or devices assigned the following three Internet Protocol ("IP") addresses, all of which are associated with LYMBERATOS:

        i.   A certain IPv4 address ("IP Address-1") tracked the Greeting Card more than two dozen times.  IP Address-1 is a broadband/landline IP address assigned to a router at a physical location.  Records provided by the service provider

reflect that internet service for IP Address-1 is subscribed to in LYMBERATOS's name, and the address of service is the LYMBERATOS Residence.

        ii.    A certain IPv6 address ("IP Address-2") tracked the Greeting Card approximately two times. IP Address-2 is a mobile device/cellular service IP address. Records provided by the service provider reflect that, at the times IP Address-2 tracked the Greeting Card, IP Address-2 was assigned to the LYMBERATOS Cellphone.

        iii.    A certain IPv6 address ("IP Address-3") tracked the Greeting Card approximately three times. IP Address-3 is a mobile device/cellular service IP address. Records provided by the service provider reflect that, at the times IP Address-3 tracked the Greeting Card, IP Address-3 was assigned to the LYMBERATOS Cellphone.

    f.    Accordingly, as set forth above, records obtained by the DEA reflect that, after causing the Greeting Card to be sent to the Investigator at her home address, LYMBERATOS tracked the progress of the Greeting Card more than two dozen times using the LYMBERATOS Cellphone or at the LYMBERATOS Residence as the Greeting Card made its way through the mail to the Investigator.

    11. Based on my participation in this investigation, including my personal observations, my review of law enforcement reports and other documents, my conversations with other law enforcement officers, and my training and experience, I believe that DIMITRIOS LYMBERATOS, the defendant, arranged for the Greeting Card to be sent to the Investigator's home address in order to interfere with and obstruct the Investigator's pending investigation into LYMBERATOS's Pharmacy, by threatening the Investigator, deliberately causing the Investigator to fear for the Investigator's physical safety upon receiving a package containing a white powder, and to create trouble for the

Investigator by causing the Investigator to come into possession of an illegal controlled substance.

   WHEREFORE, I respectfully request that a warrant be issued for the arrest of DIMITRIOS LYMBERATOS, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
STEVEN SOO HOO
Special Agent
Drug Enforcement Administration


Sworn to me through the transmission of this
Complaint by reliable electronic means (facetime),
pursuant to Federal Rule of Criminal Procedure
4.1, this 8th day of October, 2020

_____
THE HONORABLE BARBARA MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK